FILED

2022 Nov-22  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RUTVIK THAKKAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-01565-NAD |
| | ) | |
| PROCTORU, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS BASED ON CHOICE OF LAW

For the reasons stated below and on the record in the May 24, 2022 motion hearing, Defendant ProctorU, Inc.'s motion to dismiss (Doc. 21), as supplemented on choice-of-law grounds, is **GRANTED**.

## INTRODUCTION

Plaintiffs Rutvik Thakkar, William Gonigam, and Andrea Kohlenberg initiated this action against Defendant ProctorU in the United States District Court for the Central District of Illinois, alleging two claims for relief under the Illinois Biometric Information Privacy Act (BIPA). *See* Doc. 18 (amended complaint). After the Central District of Illinois transferred the case to this district (based on a contractual forum-selection clause), ProctorU argued that a contractual choice-of-law provision bars Plaintiffs' BIPA claims.

Because Plaintiffs' BIPA claims fall within the scope of that choice-of-law

1

provision, and because that choice-of-law provision is enforceable according to Alabama choice-of-law rules (which do not apply a Restatement §§ 187–188 balancing analysis to a provision such as this), Alabama substantive law applies, and Plaintiffs cannot state an Illinois state-law BIPA claim upon which relief can be granted.

## BACKGROUND

### A.    Procedural background

#### 1.    Plaintiffs' BIPA claims

On March 12, 2021, Plaintiffs filed this action in the Central District of Illinois, alleging two BIPA claims against ProctorU.   Doc. 1.   On May 20, 2021, Plaintiffs filed an amended complaint that also alleges two BIPA claims against ProctorU.   Doc. 18.

BIPA is an Illinois state statute that requires a private entity that possesses an individual's biometric information to establish "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."   740 Ill. Comp. Stat. 14/15(a).   BIPA also prohibits a private entity from "collect[ing], captur[ing], purchas[ing], receiv[ing] through trade, or otherwise obtain[ing] a person's or a customer's biometric identifier or

biometric information," unless the entity first informs the person "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used."   740 Ill. Comp. Stat. 14/15(b)(2).

Plaintiffs allege that ProctorU violated both "§§ 15(a) and 15(b) of BIPA," when it "collected, stored and used—without first publishing sufficiently specific data retention and deletion policies—the biometrics of hundreds or thousands of students who used [ProctorU's] software to take online exams."   Doc. 18 at 2–3. As noted above, Plaintiffs' amended complaint includes two claims for relief under BIPA.   First, Plaintiffs allege that ProctorU violated § 15(a) of BIPA when it failed to create, publish, and adhere to a retention schedule providing for permanent deletion of biometric information.   Doc. 18 at 17–18.   In particular, Plaintiffs allege that, "[i]n direct violation of § 15(a) of BIPA, from at least approximately March 2020 through present, [ProctorU] did not have written, publicly available policies identifying its retention schedules or guidelines, and has continued to retain the biometrics beyond the intended purpose for collection."   Doc. 18 at 10. Second, Plaintiffs allege that ProctorU violated § 15(b)(2) of BIPA when it failed to obtain proper consent from Plaintiffs before capturing, storing, and/or using Plaintiffs' biometric identifiers and biometric information.   Doc. 18 at 18–21.   In this regard, Plaintiffs allege that, "[i]n direct violation of BIPA § 15(b)(2), from at least approximately March 2020 through present, [ProctorU] never informed Illinois

students who had their facial geometry collected of the length of time for which their biometric identifiers or information would be collected, stored and used."   Doc. 18 at 10.

### 2.   ProctorU's motion to dismiss and motion to transfer venue (Central District of Illinois)

On June 3, 2021, ProctorU filed the pending motion to dismiss in the Central District of Illinois.   Doc. 21.   As filed, ProctorU's motion argued for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) because ProctorU is not subject to personal jurisdiction in Illinois, and for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' amended complaint failed to state a claim upon which relief can be granted.   Doc. 21 at 1.

On June 7, 2021, ProctorU also filed a motion to transfer venue.   Doc. 23. Both of those motions were fully briefed in the Central District of Illinois.   *See* Doc. 22; Doc. 24; Doc. 29; Doc. 30; Doc. 37; Doc. 38.[1]   Plaintiffs also filed two notices of supplemental authority in opposition to ProctorU's motion to dismiss.   *See* Doc. 34; Doc. 35.

On November 23, 2021, the Central District of Illinois granted ProctorU's

---

[1] Plaintiffs filed a brief in opposition to ProctorU's motion to dismiss (Doc. 29), and a brief in opposition to ProctorU's motion to transfer venue (Doc. 30).   On July 28, 2021, ProctorU filed unopposed motions for leave to file reply briefs (Doc. 31; Doc. 31-1; Doc. 32; Doc. 32-1).   The Central District of Illinois granted ProctorU's motions for leave, and directed the clerk to docket the reply briefs.   Doc. 36 at 23; Doc. 31-1; Doc. 32-1; Doc. 37; Doc. 38.

motion to transfer venue, transferred the case to this district, and reserved ruling on the motion to dismiss for this district.   Doc. 36 at 1.

In granting ProctorU's motion to transfer venue, the Central District of Illinois ruled that ProctorU's "Terms of Service" contained a valid and enforceable forum-selection clause to which Plaintiffs had agreed.   Doc. 36 at 23.   Consequently, the Central District of Illinois directed the clerk to "transfer this case to the U.S. District Court for the Northern District of Alabama," and ordered that a ruling on ProctorU's motion to dismiss (Doc. 21) was "reserved pending transfer to the Northern District of Alabama."   Doc. 36 at 23–24.

### 3.   The choice-of-law issues (this court)

After the case was transferred to this district, the case was assigned to the undersigned.   Doc. 40.   Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to magistrate judge jurisdiction.   Doc. 48.

On January 19, 2022, the court held a telephone status conference, during which counsel for ProctorU raised choice-of-law grounds as additional support for the pending motion to dismiss.   *See* Doc. 51; Minute Entry (Entered: 01/19/2022).

Consequently, the court ordered supplemental briefing on the choice-of-law issues discussed during that conference.   Doc. 52.   The choice-of-law issues were fully briefed in this court, including a second round of (optional) supplemental briefing on certain Alabama Supreme Court decisions.   Doc. 55; Doc. 58; Doc. 61;

Doc. 64; Doc. 65.   Plaintiffs also filed two notices of supplemental authority on the choice-of-law issues.   Doc. 59; Doc. 60.

On May 24, 2022, the court held a motion hearing on the choice-of-law issues. *See* Doc. 62; Minute Entry (Entered: 05/24/2022).

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because Plaintiffs have alleged that "there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant."   Doc. 18 at 3.

### B.    Factual background

#### 1.    Plaintiffs and ProctorU

Plaintiffs are students, domiciled in Illinois, who used ProctorU while taking online examinations.   Doc. 18 at 3, 10–14.

ProctorU is a Delaware corporation with its principal place of business in Birmingham, Alabama.   Doc. 1 at 5.

ProctorU develops, owns, and operates an online proctoring software that provides remote proctoring services.   Doc. 18 at 1; Doc. 22 at 3–4.   ProctorU monitors exams over the internet, and can be accessed and used throughout the United States and internationally.   Doc. 22 at 2–3.   "One of the ways in which ProctorU monitors students is by collecting and monitoring their facial geometry."

6

Doc. 18 at 6.   ProctorU uses the collected biometric information "to create an identity profile for students and to confirm students' identities during testing so as to prevent cheating."   Doc. 18 at 8.

> **2.**     **ProctorU's Privacy Policy and Terms of Service, including the forum-selection clause and the choice-of-law provision**

***Privacy Policy.***   Plaintiffs allege that ProctorU's Privacy Policy describes its "'policies and procedures for the collection, receipt, use, storage, sharing, transfer, disclosure, and other processing of personal information through [ProctorU's] websites, browser extensions, platforms, and applications.'"   Doc. 18 at 10 (quoting Privacy Policy); *see* Doc. 21-1 at 15.   Plaintiffs allege that, according to ProctorU's "Privacy Policy, '[d]uring testing . . . [ProctorU] [would] obtain IP address information to help troubleshoot issues and verify [users'] testing location.'"   Doc. 18 at 4 (quoting Privacy Policy) (emphasis omitted); *see* Doc. 21-1 at 16.   Plaintiffs also allege that ProctorU's Privacy Policy states as follows:   "'We require you to share your photo ID on camera and we use that ID in conjunction with biometric facial recognition software to authenticate your identity.   We also require you to perform a biometric keystroke measurement for some exams.'"   Doc. 18 at 6 (quoting Privacy Policy); *see* Doc. 21-1 at 15.   Plaintiffs allege further that ProctorU's Privacy Policy states that, "'[d]uring testing, we automatically track your keystroke pattern to ensure it matches the biometric profile created before the start of your exam.'"   Doc. 18 at 6 (quoting Privacy Policy); *see* Doc. 21-1 at 16.

Plaintiffs allege that "ProctorU's Privacy Policy simply states that 'We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations,'" and that ProctorU's "Privacy Policy does not have a section on the deletion of biometric information." Doc. 18 at 10 (quoting Privacy Policy); *see* Doc. 21-1 at 17.

**Terms of Service (including "Terms," "Services," and "Content").** ProctorU's Terms of Service—also defined as the "'*Terms*'"—"govern [users'] access to and use of [ProctorU's] website(s), browser extensions, platforms, applications, and other services (collectively, [ProctorU's] '*Services*')." Doc. 21-1 at 9 (emphasis added).[2]   ProctorU's Terms of Service (or Terms) "also apply to any information, text, audio, video, images, graphics, code, extensions, or other materials created, uploaded, downloaded, transferred or otherwise appearing on or connected with the Services when [users] interact with ProctorU, including recordings of any test sessions (collectively referred to as '*Content*')." Doc. 21-1 at 9 (emphasis added).

Importantly, ProctorU's *Privacy Policy* "is expressly incorporated into" ProctorU's *Terms of Service* (or *Terms*). Doc. 21-1 at 9. In addition, ProctorU's

---

[2] Likewise, ProctorU's Privacy Policy defines "Services" as ProctorU's "websites, browser extensions, platforms, and applications, including, but not limited to, ProctorU Go and ProctorU." Doc. 21-1 at 15.

*Terms of Service* state as follows:   "Your use of the *Services* and any *Content* that you provide during your interaction with ProctorU is subject to our *Privacy Policy*, which governs how your information and any *Content* you provide is collected and forwarded to your Testing Institution."   Doc. 21-1 at 9 (emphasis added).

**Forum-selection clause.**   ProctorU's Terms of Service include a section labeled, "15. Controlling Law and Jurisdiction."   Doc. 21-1 at 12.   That one-paragraph section states that "[a]ll claims, legal proceedings, or litigation arising out of or in connection with or related to the Services will be brought solely in a court of competent jurisdiction in the State of Alabama, County of Jefferson."   Doc. 21-1 at 12.   As noted above, that forum-selection clause was the basis for the Central District of Illinois' order transferring venue to this district.   Doc. 36 at 13.

**Choice-of-law provision.**   That same one-paragraph section in ProctorU's Terms of Service also includes the choice-of-law provision now at issue.   That choice-of-law provision states as follows:   "All Terms [i.e., Terms of Service] and any claim or action arising out of or in any way related thereto will be governed by the laws of the State of Alabama without regard to or application of its conflict of law provisions."   Doc. 21-1 at 12.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).   Under Federal Rule of Civil Procedure 12(b)(6), the court can dismiss a complaint for "failure to state a claim upon which relief can be granted."   *Id.*

A defendant's Rule 12(b)(6) motion to dismiss can challenge the legal sufficiency of a plaintiff's complaint.   *See, e.g.*, *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."); *Executive 100 v. Martin Cty.*, 922 F.2d 1536, 1539 (11th Cir. 1991) ("Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint on the basis of a dispositive issue of law." (citation omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) (complaint must contain "enough facts to state a claim to relief that is plausible on its face"); *accord, e.g.*, *Watts v. Farmers Ins. Exch.*, 2018 U.S. Dist. LEXIS 71030, at *8 (N.D. Ala. April 27, 2018) ("A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.").

Generally speaking, "analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."   *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997).   But, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's

claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Id.*

## DISCUSSION

A couple threshold matters:   First, everyone agrees that Alabama choice-of-law rules control the court's analysis here.   *See, e.g.*, Doc. 58 at 13 n.3 ("Plaintiffs agree that this Court should apply Alabama choice of law rules to determine the substantive law applicable to this case because the case was transferred here pursuant to a choice of forum clause.").[3]

Second, Plaintiffs have not raised any contract defense with respect to the validity or enforceability of ProctorU's Terms of Service or the relevant choice-of-law provision.   Illustratively, in their opposition to ProctorU's motion to transfer venue in the Central District of Illinois, "Plaintiffs argue[d] that the Terms of Service in general are procedurally unconscionable, and that the forum-selection clause specifically is invalid because it is the result of [ProctorU's] overweening bargaining power, the selected forum would be inconvenient for Plaintiffs, and enforcement of the clause would contravene the strong public policy of Illinois."   Doc. 36 at 9. And the Central District of Illinois already has ruled that "neither the Terms of

---

[3] *Accord Atlantic Marine Constr. Co. v. U.S.D.C. for W.D. Tex.*, 571 U.S. 49, 64 (2013) ("[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules.").

Service nor the forum-selection clause are procedurally unconscionable nor invalid under Illinois or federal law."   Doc. 36 at 16.

Consequently (big-picture), there are two choice-of-law issues for the court to resolve:   (1) whether Plaintiffs' BIPA claims are governed by the choice-of-law provision in ProctorU's Terms of Service; and (2) whether the choice-of-law provision is enforceable according to Alabama choice-of-law rules—that is, whether Alabama choice-of-law rules require the court to apply the plain language of the choice-of-law provision in ProctorU's Terms of Service (which would apply Alabama substantive law and bar Plaintiffs' Illinois state-law BIPA claims), or whether Alabama choice-of-law rules require the court to apply §§ 187–188 of the Restatement (Second) of Conflicts of Laws (pursuant to which Illinois substantive law, including BIPA, might apply).

Based on the plain language of ProctorU's Terms of Service, Plaintiffs' BIPA claims fall within the scope of the choice-of-law provision.   And, under Alabama choice-of-law rules (which do not apply a Restatement §§ 187–188 balancing analysis to a provision such as this), the choice-of-law provision is enforceable.   As a result, Alabama substantive law applies, and Plaintiffs cannot proceed on their Illinois state-law BIPA claims.

## I.   Plaintiffs' BIPA claims are governed by the choice-of-law provision in ProctorU's Terms of Service.

Plaintiffs' BIPA claims fall within the scope of the choice-of-law provision in

ProctorU's Terms of Service.   This is a question of contract interpretation, which requires the court to look to the contract's plain language in order to determine the parties' intent.   *Title Max of Birmingham, Inc. v. Edwards*, 973 So. 2d 1050, 1054 n.1 (Ala. 2007) ("[W]e do not look beyond the plain language of the contract to second-guess the intentions of the parties.").   In interpreting a contract, the "court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state."   *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998) (citing *Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp.*, 614 So. 2d 409 (Ala. 1993)).

As explained above, ProctorU's Terms of Service include a choice-of-law provision that states as follows:   "All Terms [of Service] and any claim or action arising out of or in any way related thereto will be governed by the laws of the State of Alabama without regard to or application of its conflict of law provisions."[4]   Doc. 21-1 at 10.   So (stated simply), the question is whether Plaintiffs' two BIPA claims "aris[e] out of or in any way relate[] []to" ProctorU's Terms of Service.   *See id.* And the answer is, yes.[5]

---

[4] The court need not address ProctorU's argument—based on the "without regard to" clause of the choice-of-law provision, Doc. 21-1 at 10—that Alabama substantive law applies regardless of Alabama choice-of-law rules.   *See* Doc. 55 at 20–21.

[5] Generally speaking, with respect to a choice-of-law provision, "the term 'arising out of or relating to' has a broad application."   *Ex parte Killian Constr. Co.*, 276 So. 3d 201, 209 (Ala. 2018) (quoting *Unum Life Ins. Co. of Am. v. Wright*, 897 So.

At a minimum, Plaintiffs' BIPA claims arise out of and/or relate to ProctorU's Terms of Service because those claims arise out of and/or relate to ProctorU's *Privacy Policy*.   As explained above, Plaintiffs' complaint includes several allegations that various aspects of ProctorU's Privacy Policy violate BIPA's retention and consent protections.   Among other things, Plaintiffs allege that the Privacy Policy addresses ProctorU's "'policies and procedures for the collection, receipt, use, storage, sharing, transfer, disclosure, and other processing of personal information through [ProctorU's] websites, browser extensions, platforms, and applications.'"   Doc. 18 at 10 (quoting Privacy Policy); *see* Doc. 21-1 at 15. Plaintiffs also allege that "ProctorU's Privacy Policy simply states that 'We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations.'"   Doc. 18 at 10 (quoting Privacy Policy); *see* Doc. 21-1 at 17.   Plaintiffs allege further that ProctorU's "Privacy Policy does not have a section on the deletion of biometric information." Doc. 18 at 10; *see* Doc. 21-1 at 17.[6]

---

2d 1059, 1086 (Ala. 2004)).

[6] Furthermore, Plaintiffs' opposition to the motion to dismiss in the Central District of Illinois also shows that their claims arise out of and/or relate to ProctorU's Privacy Policy.   *See* Doc. 29.   For example, Plaintiffs argued that ProctorU's "'Privacy Policy simply states that "We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal

As also explained above, ProctorU's Privacy Policy "is expressly incorporated into" ProctorU's Terms of Service.   Doc. 21-1 at 9.   Because Plaintiffs' claims relate to ProctorU's Privacy Policy, and because that Privacy Policy "is expressly incorporated into" ProctorU's Terms of Service (*id.*), Plaintiffs' claims necessarily relate to ProctorU's Terms of Service.   And, on the plain language of the contract, claims that relate to (and/or arise out of) the Terms of Service are governed by the choice-of-law provision.

In addition, Plaintiffs' BIPA claims arise out of and/or relate to ProctorU's Terms of Service because those claims arise out of and/or relate to ProctorU's

---

obligations."   The Privacy Policy does not have a section on the deletion of biometric information.'   These general statements do not outline the 'specific purpose and length of term for which a biometric identifier or biometric information is being collected,' nor do they establish 'a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information.' Accordingly, Plaintiffs allege ProctorU violated BIPA §§ 15(a) and 15(b) when it collected the biometrics of Plaintiffs and other Illinois residents."   Doc. 29 at 7 (citations omitted).   Plaintiffs argued further that "Plaintiffs have alleged—and ProctorU does not dispute—that when proctoring online exams, ProctorU collects students' biometrics, including their facial geometry, eye movement, and keystroke pattern.   However, ProctorU's Privacy Policy does [not] disclose how long ProctorU will retain th[ese] biometrics.   'Rather, ProctorU's Privacy Policy simply states that "We retain information for as long as necessary to perform the Services described in this Policy, as long as necessary for us to perform any contract with you or your institution, or as long as needed to comply with our legal obligations."'   This vague and unspecific policy is insufficient to comply with the requirements of BIPA §§ 15(a) and 15(b)(2) because it does not establish a 'retention schedule and guidelines for permanently destroying biometric identifies,' and it does not inform Plaintiffs of the 'specific purpose or length of term' for which their biometrics will be retained."   Doc. 29 at 19 (citations omitted).

*Services* and users' *Content*.   As explained above, the Terms of Service "govern [users'] access to and use of [ProctorU's] website(s), browser extensions, platforms, applications, and other services," which are defined as ProctorU's "'Services.'" Doc. 21-1 at 9.   The Terms "also apply to any information, text, audio, video, images, graphics, code, extensions, or other materials created, uploaded, downloaded, transferred or otherwise appearing on or connected with the Services when [users] interact with ProctorU, including recordings of any test sessions," which are defined as "'Content.'"   Doc. 21-1 at 9.

In this regard, Plaintiffs premise their BIPA claims on allegations that ProctorU collected users' biometric Content while providing its Services.   Plaintiffs allege that "'[d]uring testing . . . [ProctorU] [would] obtain IP address information to help troubleshoot issues and verify [users'] testing location.'"   Doc. 18 at 4 (quoting Privacy Policy) (emphasis omitted); *see* Doc. 21-1 at 16.   Plaintiffs also allege that ProctorU's Privacy Policy includes the following:   "'We require you to share your photo ID on camera and we use that ID in conjunction with biometric facial recognition software to authenticate your identity.   We also require you to perform a biometric keystroke measurement for some exams. . . . During testing, we automatically track your keystroke pattern to ensure it matches the biometric profile created before the start of your exam.'"   Doc. 18 at 6 (quoting Privacy Policy); *see* Doc. 21-1 at 15–16.

Again (as explained above), ProctorU's Terms state that "use of the Services and any Content that [users like Plaintiffs] provide during [their] interaction with ProctorU is subject to our Privacy Policy, which governs how [their] information and any Content [they] provide is collected."   Doc. 21-1 at 9.   Thus, Plaintiffs' claims relate to ProctorU's Services and users' Content, which are "subject to" ProctorU's Privacy Policy; and that Privacy Policy "is expressly incorporated into" ProctorU's Terms of Service (*id.*; *see supra*).   Consequently, Plaintiffs' claims relate to (and/or arise out of) ProctorU's Terms of Service and are governed by the choice-of-law provision.

Notwithstanding the plain language of the contract, Plaintiffs argue that "the choice of law clause restricts itself to only those claims arising out of or relating to the Terms of Service," and that "Plaintiffs' claims do not arise out of or relate to the Terms of Service."   Doc. 58 at 9.   Plaintiffs argue instead that their "claims solely arise out of the provision of *services* by [ProctorU]."   Doc. 58 at 9 (emphasis in original).

Preliminarily, the plain language of the contract does not permit for the line-drawing distinction that Plaintiffs attempt to make between claims arising out of ProctorU's Terms of Service and their claims arising solely out of ProctorU's "Services."   As discussed above, Plaintiffs claims *do* relate to and arise out of ProctorU's Services.   But ProctorU's Services are subject to ProctorU's Privacy

17

Policy.   And ProctorU's Privacy Policy is expressly incorporated into ProctorU's Terms of Services.   As a result, Plaintiffs' claims necessarily relate to and/or arise out of *both* ProctorU's Services *and* ProctorU's Terms of Service, and consequently are governed by the choice-of-law provision.

Relatedly, Plaintiffs argue that the forum-selection clause in the Terms of Service supports this distinction between claims arising out of the Terms of Service and their claims arising solely out of the "Services."   According to Plaintiffs, "ProctorU's choice of *law* clause covers claims that arise out of or relate to its Terms of Service.   By contrast, ProctorU's choice of *forum* clause covers '[a]ll claims, legal proceedings, or litigation arising out of or in connection with or related to the *Services*.'"   Doc. 58 at 10 (quoting Doc. 23-1 at 13) (emphasis in original).

But Plaintiffs' argument appears to presuppose that their BIPA claims cannot be governed by *both* the forum-selection provision (as the Central District of Illinois ruled), *and* the choice-of-law provision (as this court now rules).   Based on the plain language of the contract (as discussed above), those provisions are not mutually exclusive.   The scopes of those provisions can overlap, and—with respect to Plaintiffs' BIPA claims—those scopes do overlap.   There is no ambiguity or superfluity in this regard.

Plaintiffs also argue that the choice-of-law provision does not cover their BIPA claims because those claims are "statutory torts."   *See, e.g.*, Doc. 65 at 2.   But

the determinative question is not whether Plaintiffs' claims properly are characterized as sounding in contract, tort, or even statutory tort.  In construing the choice-of-law provision, the question still is one of contract interpretation—what is the "scope of the provision."  *Alabama Aircraft Indus. v. Boeing Co.*, 2022 U.S. App. LEXIS 4039, at *22 (11th Cir. Feb. 14, 2022) ("'[I]n determining whether a choice of law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision.'" (quoting *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009))).[7] And (as discussed above), based on the plain language of the contract, Plaintiffs' BIPA claims fall within the scope of the choice-of-law provision.

The court here notes that, in *Alabama Aircraft*, the Eleventh Circuit ruled that the choice-of-law provision in that case—which governed "the rights and liabilities of the parties to th[e] Agreement"—covered a statutory tort claim for misappropriation of trade secrets.  *See* 2022 U.S. App. LEXIS 4039, at *24–25.  As Plaintiffs correctly point out (*see* Doc. 65 at 2), in dicta in *Alabama Aircraft*, the Eleventh Circuit did observe that "[w]hether Alabama courts would enforce a choice-of-law provision in a contract when the claim at issue is a statutory tort is a

---

[7] For instance, "[a] choice of law provision that relates only to the agreement will not encompass related tort claims," but a provision that "purports to govern 'all disputes' having a connection to the agreement and not just the agreement itself" covers tort claims "necessarily connected to the agreement."  *Cooper*, 575 F.3d at 1162.

question for which we do not find a clear answer."   2022 U.S. App. LEXIS 4039, at *22 n.15 (citing *Williams v. Norwest Fin. Ala., Inc.*, 723 So. 2d 97, 101 (Ala. Civ. App. 1998)).   But the Alabama Court of Civil Appeals' decision in *Williams*, on which the Eleventh Circuit relied in this respect, did not address a *per se* rule whether (or not) all contractual choice-of-law provisions would cover all statutory tort claims.   Rather, just like *Alabama Aircraft*, and just like this case, the question in *Williams* was whether—on the plain language of the parties' contract—the particular choice-of-law provision at issue covered the particular claim at issue.   *See Williams*, 723 So. 2d at 101.[8]

Here, based on the allegations in Plaintiffs' complaint and the plain language of the parties' contract, the choice-of-law provision does cover Plaintiffs' two BIPA claims.

---

[8] In relevant part, the Court of Civil Appeals in *Williams* reasoned that "[t]he documents signed by the parties contained the following choice-of-law clause: 'This loan and Note and Security Agreement are governed by the laws of Alabama.' . . . We conclude that the choice-of-law clause would require that Alabama law be applied if [the plaintiff] had complained of a breach of the loan and security agreement; however, [the plaintiff's] claims sound in tort and allegedly arise from the facts and circumstances surrounding the making of the loan and security agreement.   Therefore, the choice-of-law clause does not [apply]."   723 So. 2d at 101.

**II.    The choice-of-law provision is enforceable and bars Plaintiffs' BIPA claims because Alabama choice-of-law rules require the court to apply the plain language of that provision, and not to apply Restatement §§ 187–188.**

Because Plaintiffs' BIPA claims are governed by the choice-of-law provision in ProctorU's Terms of Service, the next question is whether that provision is enforceable according to Alabama choice-of-law rules.   As noted above, the parties agree that Alabama choice-of-law rules control, and there are no contract defenses at issue with respect to the validity or enforceability of ProctorU's Terms of Service or the choice-of-law provision.

The plain language of the choice-of-law-provision—which provides that claims "will be governed by the laws of the State of Alabama," Doc. 21-1 at 12— bars Plaintiffs' Illinois state-law BIPA claims.   Consequently, Plaintiffs argue that the choice-of-law provision is unenforceable.   Specifically, Plaintiffs argue that Alabama choice-of-law rules apply §§ 187–188 of the Restatement (Second) of Conflicts of Laws to determine whether a choice-of-law provision is enforceable.[9]

---

[9] Restatement § 187 (Law of the State Chosen by the Parties) provides as follows: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.   (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the law of the chosen state would be contrary to a fundamental

*See* Doc. 58 at 12–14.   Then, under Restatement §§ 187–188, Plaintiffs argue that the choice-of-law provision in ProctorU's Terms of Service is unenforceable, that Illinois substantive law applies, and that Plaintiffs can pursue their Illinois state-law BIPA claims.   *See* Doc. 58 at 15–29; *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016).

But, with respect to choice-of-law provisions like the one at issue in this case, Alabama choice-of-law rules apply the plain terms of the provision and do not apply a Restatement §§ 187–188 balancing analysis.[10]

---

policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.   (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."   *Id.*

Furthermore, Restatement § 188 (Law Governing in Absence of Effective Choice by the Parties) provides as follows:   "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.   (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.   These contacts are to be evaluated according to their relative importance with respect to the particular issue.   (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."   *Id.*

[10] As such, the court does not address the parties' arguments—pursuant to Restatement §§ 187–188—about whether Illinois or Alabama substantive law should apply based on that balancing analysis.   *See* Doc. 55 at 23–33; Doc. 58 at

Alabama choice-of-law rules require that the court must "first look to the contract to determine whether the parties have specified a particular sovereign's law to govern."   *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004).

On the question whether a given choice-of-law provision is enforceable pursuant to Alabama choice-of-law rules, the Alabama Supreme Court's decision in *Cherry, Bekaert & Holland v. Brown* is controlling.   582 So. 2d 502 (Ala. 1991).

According to *Cherry*, "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement."   582 So. 2d at 506 (citing *Craig v. Bemis Co.*, 517 F.2d 677 (5th Cir. 1975)); *accord Polaris Sales, Inc. v. Heritage Imports, Inc.*, 879 So. 2d 1129, 1133 (Ala. 2003); *see also Alabama Aircraft*, 2022 U.S. App. LEXIS 4039, at *21 ("Contractual choice-of-law provisions are generally enforceable under Alabama law, at least for breach-of-contract claims." (citing *Stovall*, 893 So. at 1102)).

In *Cherry*, the Alabama Supreme Court provided an exception to this general "right of parties to an agreement to choose a particular state's laws to govern an agreement."   582 So. 2d at 506.   The Supreme Court instructed that, "[w]hile parties normally are allowed to choose another state's laws to govern an agreement, *where application of that other state's laws would be contrary to **Alabama policy**,* the parties' choice of law will not be given effect and ***Alabama law** will govern the*

---

15–28; Doc. 61 at 10–15.

*agreement*." *Id.* at 507 (emphasis added). The parties in *Cherry* "ha[d] chosen North Carolina law to govern the agreement," but the Supreme Court invalidated a covenant not to compete—that "North Carolina law would [have] enforce[d]"— because "Alabama's policy against covenants not to compete is a fundamental public policy." *Id.* at 507.

The Alabama Supreme Court reiterated this Alabama-policy exception five years later in *Buckley v. Seymour*: "[T]he right of parties to a contract to choose the law governing their obligations is recognized by Alabama law *only if the consequences of that election are not contrary to **Alabama public policy***." 679 So. 2d 220, 226 (Ala. 1996) (emphasis added).

Here, because the parties contracted for Alabama substantive law in the choice-of-law provision, that provision is governed by *Cherry*'s general rule of the "right of parties to an agreement to choose a particular state's laws to govern." 582 So. 2d at 506. And that choice of Alabama substantive law cannot be contrary to Alabama public policy, so *Cherry*'s Alabama-policy exception cannot apply. *Id.* at 507.

Indeed, Plaintiffs have identified no Alabama state appellate decision wherein the court has invalidated a choice-of-law provision—that, like the provision in ProctorU's Terms of Service, chooses Alabama substantive law—either on public policy grounds or pursuant to Restatement §§ 187–188. And this court has found

none.

Plaintiffs argue instead that the public policy exception in *Cherry* is not Alabama-only, and that Alabama courts apply Restatement §§ 187–188 "whenever the chosen state's law violates the fundamental policy of the non-chosen state (if the non-chosen state has a materially greater interest than the state chosen by the parties and would otherwise apply absent the parties' choice)." Doc. 58 at 14. According to Plaintiffs, "[s]ometimes, that's Alabama; other times—like here—it's not." Doc. 58 at 14. Plaintiffs' argument is based in part on *Blalock v. Perfect Subscription Co.*, a 1978 federal decision from the United States District Court for the Southern District of Alabama. *See* 458 F. Supp. 123 (S.D. Ala. 1978); *see, e.g.*, Doc. 58 at 13.

Plaintiffs are correct that *Blalock* did discuss Restatement §§ 187–188. Plaintiffs also are correct that, in *Cherry*, the Alabama Supreme Court discussed both *Blalock* and Restatement §§ 187–188. But what matters is that the Alabama Supreme Court in *Cherry* did not adopt Restatement §§ 187–188; nor has the Supreme Court adopted Restatement §§ 187–188 since *Cherry*.

As a preliminary matter, it is the Alabama Supreme Court's decision in *Cherry*—and not the federal lower court decision in *Blalock*—that controls on this question of Alabama state law.[11] In *Cherry*, the Supreme Court reasoned that

---

[11] *See, e.g.*, *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1177 (11th Cir.

"North Carolina law would seem to govern the present agreement, because [the parties] have apparently chosen the laws of North Carolina to govern it," but that "this principle is qualified by the principles set out in [*Blalock*], and the cases following it."   582 So. 2d at 506.

The Supreme Court summarized the *Blalock* holding as follows:   The "Southern District of Alabama held that where the parties' choice of law would be contrary to the fundamental public policies of the forum state, Alabama, the parties' choice of law could not be given effect and that the laws of the forum must control the agreement."   *Id.* at 506–07.[12]   The Supreme Court noted that the "*Blalock* court referred to [Restatement §§ 187–188] for guidance," and then included lengthy quotations from Restatement § 187, comment (g) to Restatement § 187, and the comments to Restatement § 187.   *Id.* at 507.   The Supreme Court then summarized the *Blalock* holding again:   "The *Blalock* court went on to hold that because the covenant not to compete, which would be enforced under Pennsylvania law, 'flies directly in the face of the public policy of Alabama as set out by statute,' the parties' choice of law could not be given effect, and the law of Alabama . . . governed the

2013) ("'[A]s a federal court sitting in diversity, [the court] [is] required to apply the law as declared by the state's highest court.'" (quoting *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999))).

[12] In *Blalock*, "the parties to an agreement, which contained a covenant not to compete, chose Pennsylvania law (which enforces covenants not to compete) to govern the agreement."   *Cherry*, 582 So. 2d at 506.

agreement." *Id.* at 507 (citation omitted).   Characterizing the "situation" in *Cherry* as "similar" to that in *Blalock*, the Supreme Court "h[e]ld that the contractual choice of North Carolina law cannot be given effect and that Alabama law will govern this agreement." *Id.* at 507–08.[13]

For sake of completeness, in *Blalock*, the court initially reasoned that the choice-of-law provision in that case "[wa]s due to be enforced and that the laws of the State of Pennsylvania govern[ed] the construction of th[e] contract." 458 F. Supp. at 126.   But the "crucial question" was "the validity of the covenant against competition contained in the contract," as to which the court "[began] its analysis with the conclusion that the covenant against competition [wa]s enforceable against the plaintiff in the absence of some showing that its' enforcement [wa]s due to be excused or prohibited." *Id.*   Then, reasoning that the "the covenant would be void under Alabama law," the court restated the question as whether to "give effect to the Pennsylvania law and enforce the contract, or find that the Alabama law [wa]s

_____

[13] The Supreme Court in *Cherry* reasoned as follows:   "In this case, because the parties have chosen North Carolina law to govern the agreement and North Carolina law would enforce the covenant not to compete . . . , the parties' choice of law must fall.   This Court finds that Alabama's policy against covenants not to compete is a fundamental public policy; that Alabama law would be applicable but for the parties' choice of North Carolina law; and that Alabama has a materially greater interest than North Carolina in the determination of this issue, because [the defendant] is attempting to enforce a covenant not to compete in Alabama and against an Alabama resident.   Furthermore, application of North Carolina law, enforcing the covenant not to compete, clearly 'flies directly in the face of the public policy of Alabama.'" 582 So. 2d at 507 (quoting *Blalock*, 458 F. Supp. at 127).

controlling on this point and declare the covenant void." *Id.* at 126–27.  Stating that "[t]here ha[d] been no Alabama appellate decision involving [similar] factual circumstances," the *Blalock* court "[found] it appropriate to look to the teachings of the American Law Institute," and then quoted at length from Restatement § 187 and comment (g) to Restatement § 187. *Id.* at 127 (also discussing Restatement § 188). "Under th[e] [Restatement's] characterization of the law," the *Blalock* court ruled that Restatement § 187(2)(b) "clearly requires this Court to refuse enforcement of the anti-competition covenant since it flies directly in the face of the public policy of Alabama as set out by statute, and since the Court concludes that Alabama law would be applicable but for the contractual choice of Pennsylvania." *Id.* at 127.

Based on their reading of *Cherry*, Plaintiffs argue that "the question is whether application of the chosen law would be contrary to a fundamental policy 'of a state which has a materially greater interest than the chosen state . . . and which . . . would [otherwise] be the state of the applicable law,' not specifically whether the chosen law would be contrary to fundamental Alabama public policy."  Doc. 58 at 13 (citing *Cherry*, 582 So. 2d at 507; Restatement § 187(2)(b)).  But that is not what *Cherry* says.  The Alabama Supreme Court in *Cherry* could have adopted Restatement §§ 187–188, but it did not.  Tellingly, the Supreme Court never conducted the multi-factor, balancing analysis that Restatement §§ 187–188 outline, and that the parties' briefing here details in depth. *See* Doc. 58 at 15–28 (arguing

that the Restatement §§ 187–188 analysis favors the application of Illinois law); Doc. 55 at 23–33; Doc. 61 at 10–15 (arguing that the Restatement §§ 187–188 analysis favors the application of Alabama law); *see also DJR Assocs., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1223–29 (N.D. Ala. 2017) (conducting a full-scale Restatement §§ 187–188 analysis that is absent from the *Cherry* decision).

While *Blalock* embraced Restatement §§ 187–188, *Cherry* reduced *Blalock*'s holding into an Alabama-only exception to contracting parties' general right to choose a particular state's laws to govern:  "[W]here the parties' choice of law would be contrary to the fundamental public policies of the forum state, *Alabama*, the parties' choice of law [cannot] be given effect and the laws of the forum must control the agreement."   *Cherry*, 582 So. 2d at 506–07 (emphasis added).

Plaintiffs also argue that *Cherry* "expressly used the Second Restatement approach."   Doc. 65 at 3.   But that again is not what *Cherry* expressly says. Nowhere in the *Cherry* decision does the Supreme Court hold that the Restatement §§ 187–188 analysis governs the enforceability of a choice-of-law provision under Alabama law.   Rather (as discussed above), a close reading of *Cherry* shows that the Alabama Supreme Court did not explicitly apply the Restatement analysis, but instead boiled down the *Blalock* holding into an Alabama-only exception to the general rule of contracting parties' right to choose another state's laws to govern.

As stated by *Cherry*, and confirmed by *Buckley*, the rule under Alabama law

is that a valid choice-of-law provision controls unless it violates Alabama public policy.  *See Cherry*, 582 So. 2d at 506–07; *Buckley*, 679 So. 2d at 226.  And (as noted above), there appears to be no Alabama state appellate caselaw that, pursuant to Restatement §§ 187–188, invalidates a choice-of-law provision that—like the provision in ProctorU's Terms of Service—chooses Alabama substantive law.

Moreover, choice-of-law provisions are routinely enforced in Alabama without any Restatement §§ 187–188 analysis.  *See, e.g.*, *Polaris*, 879 So. 2d at 1133; *Ex parte HealthSouth Corp.*, 974 So. 2d 288, 295 (Ala. 2007) (applying Michigan substantive law without additional analysis because the agreement contained "a choice-of-law clause that states that Michigan law will govern the interpretation of the contract"); *Stovall*, 893 So. 2d 1090; *see also Jennmar of Kentucky, Inc. v. Wilson*, 2021 U.S. Dist. LEXIS 146953, at *10 (N.D. Ala. Aug. 5, 2021) ("Alabama courts generally honor contractual choice of law provisions.").

Plaintiffs have identified several federal district court decisions that have applied Restatement §§ 187–188 pursuant to Alabama choice-of-law rules, including some that have invalidated a choice-of-law provision that chooses Alabama substantive law.  *See, e.g.*, Doc. 58 at 8, 12–14; *Wingard v. Lansforsakringar AB*, 2013 U.S. Dist. LEXIS 141572, at *1 (M.D. Ala. Sept. 30, 2013); *Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC*, 605 F. Supp. 2d 1189 (N.D. Ala. 2009); *DJR Assocs.*, 241 F. Supp. 3d 1208; *McGriff Seibels & Williams, Inc. v.*

*Sparks*, 2019 U.S. Dist. LEXIS 161548, at *1 (N.D. Ala. Sept. 23, 2019); *Blalock*, 458 F. Supp. 123; *Core Laboratories LP v. AmSpec*, 2018 U.S. Dist. LEXIS 228565, at *30 (S.D. Ala. May 10, 2018).

But none of these cases appears to have analyzed *Cherry* (or *Buckley*), or to have asked whether Alabama choice-of-law rules actually apply a Restatement §§ 187–188 analysis; instead, these cases appear to have assumed without deciding that Restatement §§ 187–188 apply under Alabama law.   *See, e.g.*, *McGriff Seibels*, 2019 U.S. Dist. LEXIS 161548, at *30 ("The court must analyze whether the parties' 'contractual choice-of-law clause is enforceable by reference to the Second Restatement of Conflicts §§ 187–88.'" (quoting *DJR Assocs.*, 241 F. Supp. 3d at 1222)); *Wingard*, 2013 U.S. Dist. LEXIS 141572, at *33 ("Alabama courts analyze whether a party's contractual choice-of-law clause is enforceable by reference to the Second Restatement of Conflicts §§ 187–88." (citing *Cherry*, 582 So. 2d 502)). While this court cannot say that those decisions were wrongly decided, this court can say that those decisions are not binding here, and that this court reads *Cherry* differently.   *See also Allied Sales & Serv. Co. v. Global Indus. Techs., Inc.*, 2000 U.S. Dist. LEXIS 7774, at *11–12 (S.D. Ala. May 1, 2000) (reasoning that *Cherry* "did not adopt or even address [Restatement § 187(2)(a)], but dealt only with the separate issue of when to uphold choice of law provisions when the selected state's substantive law violates Alabama public policy").

31

Plaintiffs argue further that the Alabama Supreme Court—if not explicitly—
has implicitly or practically adopted the Restatement §§ 187–188 analysis.   But
(again), that is not what the Alabama Supreme Court did in *Cherry* or in *Buckley*, or
has done since.   And, as the United States Supreme Court has observed in a different
context, elephants don't hide in mouseholes.[14]   The Alabama Supreme Court knows
just how to adopt certain Restatement sections into Alabama law (or not), and the
Supreme Court has not done so with respect to Restatement §§ 187–188.   *See, e.g.*,
*Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 823 (Ala. 1991) (collecting
cases, confirming that Alabama law adheres "to the traditional view of the first
*Restatement*, which looks to the *lex loci delicti* in tort cases," and concluding that,
"[a]fter careful consideration, we are not convinced that we should abandon the *lex
loci delicti* rule for the approach of the *Restatement (Second)* on the facts of the
present case"); *Cobbs, Allen & Hall, Inc. v. Epic Holdings, Inc.*, 335 So. 3d 1115,
1134 (Ala. 2021) ("[W]e expressly hold that [Restatement (Second) of Torts] § 772
should be applied in appropriate factual scenarios that implicate the defense of
justification."); *Laster v. Norfolk S. Ry.*, 13 So. 3d 922, 930 (Ala. 2009) ("Having
held that the duty of care set out in Restatement [(Second) of Torts] § 339, rather

---

[14] *Cf. Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress,
we have held, does not alter the fundamental details of a regulatory scheme in vague
terms or ancillary provisions—it does not, one might say, hide elephants in
mouseholes.").

than the conventional duty of care, applies in this case, we turn to the elements of the Restatement test.").

In any event, if forced to choose between what the Alabama Supreme Court explicitly has said (and hasn't said), and what the Alabama Supreme Court arguably may have implied or practically applied, this court chooses what the Alabama Supreme Court explicitly has said—here, in *Cherry*, *Buckley*, and since.

Plaintiffs argue that this Alabama-only exception to contracting parties' general right to choose a particular state's laws to govern makes for an unfair one-way ratchet that respects the sovereignty of Alabama law, but not the interests and substantive law of other states.  *See, e.g.*, Doc. 58 at 20 (arguing that BIPA "embodies a fundamental policy of the state of Illinois," and that applying the "contractual choice of local law . . . would eviscerate a BIPA claim" (citation and quotation marks omitted)); Restatement § 187 cmt. g ("Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation."); *DJR Assocs.*, 241 F. Supp. 3d at 1221 ("The desire of the parties is outweighed by the sovereignty of the State.").  But that argument would be for the Alabama Supreme Court to address—not this court.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant ProctorU's motion to dismiss (Doc. 21), as supplemented on choice-of-law grounds, and

**DISMISSES WITH PREJUDICE** Plaintiffs' BIPA claims.   The court separately will enter final judgment.   In this court, Plaintiffs have not requested leave to amend their complaint in the event of dismissal; to the extent that Plaintiffs would seek such leave, Plaintiffs should file an appropriate motion.

      **DONE** and **ORDERED** this November 22, 2022.

_____

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE

34